466 F.2d 1226
 Alvin H. FRANKEL, Guardian of the Estate of Marilyn Heym, an
incompetent
v.
Mary HEYM
v.
UNITED STATES of America (Third-Party Defendant).
Alvin H. Frankel, Guardian of the Estate of Marilyn Heym, an
incompetent and Herbert Heym, Appellants in No. 71-1349.
Alvin H. FRANKEL, Guardian of the Estate of Marilyn Heym, an
incompetent
v.
Mary HEYM
v.
UNITED STATES of America, (Third-Party Defendant), Appellant
in No.71-1350.
Alvin H. FRANKEL, Guardian of the Estate of Marilyn Heym, an
incompetent, and Herbert Heym, Appellants in No.
71-1351, and Mary Heym, his wife
v.
UNITED STATES of America and
Mary Heym(Defendant in Counterclaim).
Alvin H. FRANKEL, Guardian of the Estate of Marilyn Heym, an
incompetent, and Herbert Heym and Mary Heym, his wife
v.
UNITED STATES of America, Appellant in No. 71-1352, and
Mary Heym (Defendant in Counterclaim).
 Nos. 71-1349 to 71-1352.
 United States Court of Appeals,
Third Circuit.
 Argued April 10, 1972.
Decided July 18, 1972.
 
 Marvin I. Lessin, Manchel, Lundy, Lessin, Finkel, Rabelow & Braverman, Philadelphia, Pa., for Alvin H. Frankel.
 Leonard Schaitman, Dept. of Justice, Civ.Div., Washington, D.C., for United States.
 Before HASTIE, VAN DUSEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 Marilyn Heym suffered almost totally disabling permanent injuries in a collision between an automobile in which she was riding and an army vehicle. Injuries included brain damage that has left her psychotic and with the mentality of a five year old child. Her guardian and her father, suing in the district court under the Federal Tort Claims Act, have been awarded damages aggregating more than $1,100,000. On this appeal liability is not contested. However, both the plaintiffs and the United States have appealed from the district court's determination and award of damages. We consider first the appeal of the United States.
 
 
 2
 The district court awarded $650,000 for "pain and suffering, loss of enjoyment of life's pleasures, inconvenience, disfigurement and permanent injuries." This award is challenged as excessive, and not in accord with law and improperly made "for loss of life." The district court explained this very substantial award as follows:
 
 
 3
 ". . . The Government argues that a large part of Marilyn's pain and suffering was not conscious because she was in a coma or semi-coma. Even while in a coma she responded to painful stimuli. For many weeks when she was in a semi-coma she recognized members of her family but could not communicate with them. During this time she undoubtedly appreciated pain. In the future she will experience pain from her arm, the use of the prosthesis and from the therapy that she must undergo for the rest of her life. She frequently falls 'with a thud,' making no attempt to break her fall. She is suffering and will continue to suffer mentally. She knows that she is a girl and attempts to appear attractive. Her hostility toward men stems from an awareness that she is a girl but that she will never enjoy a normal relationship with men. She realizes that her sudden and uncontrollable outbursts are wrong and she feels badly that she cannot explain her actions and apologizes for them. In addition, she has lost the ability to engage in those activities which normally contribute to the enjoyment of life. The possibility of marriage and motherhood are gone. Carminati v. Phila. Transp. Co., 1962, 405 Pa. 500, 506, 176 A.2d 440. She cannot continue in the art career that she so enjoyed, or engage in horseback riding. She has lost peace of mind and well-being. DiChiacchio v. Rockcraft Stone Prod. Co., 1967, 424 Pa. 77, 225 A.2d 913. She will never be able to dance, or engage in recreational or normal family activities. Downie v. United States Lines Co., 3d Cir. 1966, 359 F.2d 344. In short, she has lost almost every enjoyment that life can offer. An award of $650,000.00 will be made for these items. . . ." Frankel v. United States, E.D.Pa.1970, 321 F.Supp. 1331, 1338- 1339.
 
 
 4
 The problem here is inherent in any effort to translate such catastrophic human loss as Miss Heym suffered into money damages. In this process systematic logic is not helpful and precision is not achievable.
 
 
 5
 The district court's dispassionate opinion reflects the relevant considerations that led to its determination of damages. We cannot say that the award was in any way shocking, unfair or biased.
 
 
 6
 The government's second contention is that the district court erred in rejecting a request that any award to Miss Heym take the form of a judicially established trust for her benefit. The court would designate or approve the trustee. The corpus of the trust would be supplied by the United States in an amount awarded by the court with a requirement that the government supplement the fund if the court should so require and that any amount remaining in the trust at the plaintiff's death should revert to the government.[1]
 
 
 7
 Admittedly, courts of law had no power at common law to enter judgment in terms other than a simple award of money damages. In view of that limitation, we have examined the enactment, 28 U.S.C. ch. 171, that authorized and circumscribed tort actions against the sovereign and, to some extent, prescribed the procedure for such cases. More particularly, section 2679(b) of Title 28, makes the remedy provided in section 1346 of Title 28 the exclusive resort of such claimants as the plaintiffs. Among other things, section 1346(b) authorizes district courts to entertain "civil actions on claims against the United States, for money damages. . . ." Arguably, this language at least implies that primary awards in such civil suits must take the form of common laws money judgments, the only form of "money damages" known to the common law. More probably, the Congress never considered whether it might be desirable that some awards be made in a different form.
 
 
 8
 We agree with the district court that in administering the legislation in question a district court should not make other than lump-sum money judgments unless and until Congress shall authorize a different type of award. The relaxation of sovereign immunity is peculiarly a matter of legislative concern, responsibility and policy. If novel types of awards are to be permitted against the government, Congress should affirmatively authorize them.
 
 
 9
 The district court also alluded to the continuing burden of judicial supervision that would attend a judgment creating a life trust. This too is a consideration against the government's proposal.
 
 
 10
 The plaintiffs' appeals question the awards of only $62,000 for loss of future earnings and $461,084 for the anticipated cost of future institutional care.
 
 
 11
 On the issue of anticipated future earnings, it is argued that the court erred in not giving full effect to the expert testimony of an economist that, but for this disabling accident, Miss Heym's probable future earnings would have amounted to $237,630. At the time of the accident Miss Heym was a promising 19 year old commercial art student who intended after graduation to enter upon a career as a commercial artist. On this basis, the witness assumed her future employment as a successful commercial artist working continuously until normal retirement age, and he calculated loss of future earnings accordingly. However, the district court, taking into account evidence of Miss Heym's temperament and personality, deemed it probable that she would have married and borne children, with consequent substantial interruptions of gainful employment. In addition, the degree of success Miss Heym would have achieved in the career for which she was preparing but upon which she had not yet embarked was an additional uncertainty which the court could properly take into account. In these circumstances, the district court concluded that loss of future earnings from the date of judgment amounted to $125,000, the present worth of which was $62,000.[2] This determination was not arbitrary or unreasonable.
 
 
 12
 Finally, it is argued that the sum of $461,084 awarded for future institutional care is inadequate. The parties agree that Miss Heym will require institutional care for the remainder of her life. They disagree on her life expectancy. Appellants contend that because Miss Heym's vital organs are not impaired she is entitled to an award measured by the normal life expectancy of a young woman of her age. But there was evidence that her severe brain damage and emotional disturbance had consequences reasonably calculated to shorten her life span. These consequences included convulsions, violent emotional outbursts, circulatory problems and frequent unpredictable falls. Compulsive eating and attendant obesity also are observable. Considering these abnormalities, we cannot say that the court's very substantial award for future institutional care was inadequate because it did not cover the full life expectancy of a young person in normal health.
 
 
 13
 It also is contended that the district court erred in reducing the future cost of institutional care to present worth and in not making a substantial allowance for future inflation. In its opinion the district court fully considered and rejected this contention. 321 F.Supp. 1331, 1345-1348. We agree with the district court's analysis and conclusion.
 
 
 14
 The judgment will be affirmed.
 
 
 
 [1]
 The obvious advantage of this arrangement would be to prevent the award, intended as compensation to the injured person, from becoming a windfall to others who would control its use and disbursement
 
 
 [2]
 An additional $12,500 was awarded for loss of earnings from the date of injury until judgment