George M. DIEDE, Plaintiff-Appellee,

v.

BURLINGTON NORTHERN
RAILROAD COMPANY,
Defendant-Appellant.

No. 84–4233.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 3, 1985.

Decided Sept. 27, 1985.

John C. Boylan, Minneapolis, Minn., for plaintiff-appellee.

Lawrence D. Silvernale, Seattle, Wash., for defendant-appellant.

Before WRIGHT, PREGERSON, and ALARCON, Circuit Judges.

PREGERSON, Circuit Judge:

George M. Diede, a brakeman for the Burlington Northern Railroad Co., was injured when the locomotive on which he was working derailed as a result of sabotage. Diede filed a complaint against the railroad under both the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982), and the Boiler Safety Inspection Act (also referred as to the Locomotive Inspection Act), 45 U.S.C. §§ 22–34 (1982).

Diede claimed that when the locomotive derailed and tipped over, he was struck in

the head by a "Bio-Pak," a suitcase-like container holding a mask with an oxygen supply. The Bio-Pak is used to prevent inhalation of carbon monoxide and other dangerous substances when the locomotive must make an emergency stop inside the Cascade Tunnel. The railroad had simply stacked the two Bio-Paks in Diede's locomotive on top of each other on the floor.

The jury returned a general verdict of 1.25 million dollars in favor of Diede on the FELA claim. The railroad argues that the district court made two reversible evidentiary errors during the trial:

(1) At the close of all of the evidence, Diede withdrew his claim under the Boiler Safety Inspection Act. The district court, however, still admitted into evidence as an exhibit a regulation promulgated by the Federal Railroad Administration pursuant to the Boiler Safety Inspection Act. The railroad argues that the district court should not have admitted the exhibit into evidence or, at the very least, should not have permitted it to go into the jury room.

(2) On the issue of damages, the district court permitted the railroad's witness to testify extensively about the cost of an annuity that would provide a stream of payments to replace Diede's future income. But the court would not permit the witness to testify about the non-taxability of the annuity payments if the railroad purchased the annuity for Diede. Nor would the court admit into evidence the railroad's proposed stipulation to purchase an annuity. The railroad argues that the failure to admit both the testimony about non-taxability and the proposed stipulation to purchase an annuity resulted in an inflated verdict.

The district court denied the railroad's motion for a new trial or remittitur on these two grounds, and the railroad appeals.

## STANDARD OF REVIEW

In deciding whether to admit or exclude evidence, the trial court has broad discretion. *Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir.1984). This discretion includes the determinations whether the proffered evidence is relevant under Fed.R. Evid. 402, *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir.), *cert. denied*, 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980), and if relevant, whether it should nevertheless be excluded under Fed.R.Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *United States v. Layton*, 767 F.2d 549, 553 (9th Cir.1985); *United States v. Nadler*, 698 F.2d 995, 1000 (9th Cir.1983).

Moreover, this court will not overturn a ruling which admits or excludes evidence, even if the trial court abused its discretion, if the error is harmless. *Burgess*, 727 F.2d at 833, Fed.R.Civ.P. 61. A trial court's error in excluding or admitting evidence in civil actions is harmless if the jury's verdict is " 'more probably than not untainted by the error.' " *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir.1985) (quoting *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir.1983) ).

## DISCUSSION

I.. The district court did not abuse its discretion by admitting the Boiler Safety Inspection Act regulation as evidence of negligence under Diede's FELA claim.

49 C.F.R. § 229.45, promulgated by the Federal Railroad Administration pursuant to the Boiler Safety Inspection Act, provides in pertinent part:

> All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. These conditions include: insecure attachment of components, including third rail shoes or beams, traction motors and motor gear cases, and fuel tanks....

49 C.F.R. § 229.45 (1984).

The railroad argues (1) that the regulation is irrelevant to Diede's FELA claim because a Bio-Pak is not a "component" within the meaning of the regulation and

(2) that even if the regulation is relevant, its admission as an exhibit taken into the jury room was unduly prejudicial.

■ In denying the railroad's motion for a new trial, the district court carefully considered the railroad's contention that the Bio-Pak was not a component within the meaning of the regulation. We agree with the district court that the term "component" encompasses a safety device such as the Bio-Pak.

The Boiler Safety Inspection Act and its attendant regulations are "to be liberally construed in the light of [their] prime purpose, the protection of employees and others by requiring the use of safe equipment." *Lilly v. Grand Trunk Western Railroad Co.*, 317 U.S. 481, 486, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943).

The regulation at issue broadly commands that "[a]ll systems and components on a locomotive shall be free of conditions that endanger the safety of the crew." 49 C.F.R. § 229.45. One of these conditions is the insecure attachment of components. The use of the term "including" before the list of components that must be securely attached indicates the Federal Railroad Administration's intent that the list be merely illustrative, not exclusive. Because the Bio-Pak is a piece of standard equipment on locomotives running through the Cascade Tunnel, necessary to protect the health of the crew, we find that it is a component within the meaning of 49 C.F.R. § 229.45. *See Green v. River Terminal Railway Co.*, 585 F.Supp. 1019, 1027–28 (N.D.Ohio 1984), *aff'd*, 763 F.2d 805, (6th Cir.1985) (a radio is a "part and appurtenance" under the Boiler Act). We therefore hold that the district court did not abuse its discretion in admitting the regulation as evidence relevant to the standard of care.

The railroad argues that even if the regulation was relevant as some evidence of the standard of care, the district court should not have allowed the exhibit embodying the regulation to go into the jury room during deliberations. The railroad contends that the regulation's probative value was substantially outweighed by the danger of unfair prejudice under Fed.R. Evid. 403 because its admission in written form "virtually directed liability against the defendant railroad." Diede argues that the absence of an instruction referring to the regulation and the absence of discussion of the regulation in plaintiff's closing argument prevented the jury from attaching undue weight to the regulation.

Given the trial court's broad discretion in admitting or excluding evidence under Fed. R.Evid. 403, *see United States v. Layton*, 767 F.2d 549, 553–54 (9th Cir.1985), we are inclined to conclude that the district court did not err in admitting the exhibit.

Moreover, even if the district court did err in admitting the regulation, the error was harmless because the regulation was simply cumulative evidence. Diede presented enough other evidence of negligence that the jury's verdict would be "more probably than not untainted by the error." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir.1985). In conclusion, the district court did not commit reversible error by admitting this regulation into evidence.

II. The district court did not abuse its discretion by excluding testimony concerning the non-taxability of a railroad-purchased annuity and the railroad's stipulation to purchase such an annuity.

■ On January 14, 1983, Congress amended section 104 of the Internal Revenue Code to provide that damages received in personal injury actions are not includable in gross income whether they are received in a lump sum or periodic payments. *See* 26 U.S.C. § 104(a)(2) (1982) (amended by Act of Jan. 14, 1983, Pub.L. No. 97–473, Title I, § 101(a), 96 Stat. 2605).

At trial, the railroad's witness, an annuity salesman for an insurance company, testified about the cost of an annuity to replace Diede's future income stream. The railroad also offered to present testimony that the payments would be tax-free if the

railroad purchased the annuity[1] and offered "to stipulate and bind Burlington Northern that if any final judgment or settlement is taken against Burlington Northern in this case, that the Burlington Northern will, at the option of the plaintiff, satisfy that settlement or judgment by the purchase of a similar annuity at whatever rate is available at the time the annuity is purchased."

The district court sustained Diede's objection to the proffered testimony and stipulation because (1) it was irrelevant, and (2) it would confuse the issues and waste time.

In deciding whether appellant's proffered evidence was relevant, we must determine whether the jury was limited to a lump sum award or whether it could have required the railroad to pay periodic damages. The Supreme Court recently observed that although an award for impaired earning capacity "could in theory take the form of periodic payments, ... in this country it has traditionally taken the form of a lump sum, paid at the conclusion of the litigation." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983) (footnote omitted).

Although a number of states have enacted legislation authorizing the award of periodic damage payments in certain personal injury cases, "[i]t has long been settled that questions concerning the measure of damages in an FELA action are federal in character" and thus federal law, not state law, applies. *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689 (1980).

In the only federal case directly addressing the issue of lump-sum versus periodic damages, the Third Circuit held that, with respect to the Federal Tort Claims Act, "a district court should not make other than lump-sum money judgments unless and until Congress shall authorize a different type of award." *Frankel v. Heym*, 466 F.2d 1226, 1228–29 (3d Cir.1972).

But the *Frankel* court's logic is inapplicable to the FELA. The Third Circuit reasoned that because Congress had waived sovereign immunity in the Federal Tort Claims Act, it was up to Congress to authorize novel types of damage awards. *Id.* at 1229. In the instant case, the relevant provision of the FELA permits suits against private interstate carriers. Because no waiver of sovereign immunity is involved in this case, there is no particular need to look to Congress for direction as to damages.

We need not decide, however, whether it is within the district court's discretion to authorize periodic damage awards in FELA cases. Even if the railroad's evidence pertaining to the non-taxability of such an award was relevant, the district court properly excluded the evidence under Fed.R. Evid. 403 because its probative value was outweighed by the danger that it would confuse the issues, mislead the jury, and waste the court's time. The railroad did not offer a concrete written stipulation setting forth the details of the annuity it proposed to purchase. Instead, it simply made an oral offer to stipulate. The district court felt that to admit the testimony merely on the basis of a vague oral promise would lead the jury into a "Never, Never Land."

In addition, there are significant constructive receipt problems with the railroad's offer to give Diede the option of receiving, as a lump sum, the cost to the railroad of purchasing the annuity. In the accompanying legislative history, Congress explains that the amendment to section 104(a)(2) "is intended to codify, rather than change, present law. Thus, [the interest component of] the periodic payments of personal injury damages [is] still *excludable from income only if the recipient taxpayer is not in constructive receipt of or does not have the current economic benefit of the sum required to produce the periodic payments.*" S.Rep. No. 646, 97th Cong., 2d Sess. 4, *reprinted in* 1982 U.S.

---

**1.** In contrast, if Diede purchased the annuity with a lump sum received from the railroad, the interest portion of the payments would be taxable as income.

Code Cong. & Ad.News 4580, 4583 (emphasis added).

Because the railroad gave Diede the option of obtaining the sum necessary to produce the periodic payments, Diede probably has constructively received that sum and, as we read section 104(a)(2), would be taxed on the interest component of the annuity payments even if he chooses to have the railroad purchase the annuity. The confusion caused by the problem of constructive receipt is another ground supporting the district court's decision to exclude the railroad's evidence on the potential non-taxability of the interest component of periodic payments made pursuant to the railroad's proposed purchase of an annuity.

In conclusion, the district court did not err (1) in admitting the Boiler Safety Inspection Act regulation as evidence of negligence under Diede's FELA claim, or (2) in excluding testimony concerning the non-taxability of a railroad-purchased annuity and the railroad's stipulation to purchase such an annuity.

AFFIRMED.

Nelson, Circuit Judge, filed concurring opinion.